UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL NO. 05-191-REW

ROBERT LEE OAKS, JR.                                                                    PLAINTIFF


vs:                                              OPINION AND ORDER


ALLSTATE INSURANCE COMPANY
and DWIGHT HOWARD                                                              DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

## I.      Procedural History

In this action, Plaintiff Robert Lee Oaks, Jr. sues Allstate Insurance Company ("Allstate")

and Allstate agent Dwight Howard ("Howard") concerning a flood insurance policy issued by

Allstate, through Howard, on Oaks's residence in Martin County, Kentucky.  The residence suffered

flood damage on May 31, 2004, ultimately resulting in this policy dispute.

On June 17, 2005, after Plaintiff had initiated a state-court action on the policy, Defendants

removed this matter to federal court pursuant to 42 U.S.C. § 4072 and 28 U.S.C. § 1331.  *See* DE

#1.  With the consent of the parties, pursuant to 28 U.S.C. § 636(c), the case was assigned to this

Court for all proceedings and final disposition.  *See* DE#15.  This matter is presently before the

Court upon cross motions for summary judgment.  *See* DE#s 22, 27, and 29.  The Court has fully

considered the record, including the motions, exhibits, and responses.  *See* DE#s 32 and 33.[1]

---

[1]

The Court notes that Plaintiff's summary judgment motion was late-filed, without excuse.
Further, and inexplicably, Plaintiff filed no response in opposition to Defendants' summary
judgment filings.  Despite these noncompliances, the Court does consider all filings and the
complete record in ruling on the pending motions.

## II.     Factual Background

In April of 2003, Plaintiff Oaks agreed to purchase a home in Inez, Kentucky.  *See* Pl. Motion for Summary Judgment, DE# 29, at 1.  Plaintiff's lender required that he obtain insurance, including flood coverage, as a condition of closing. *See  id*.  As such, Plaintiff contacted Allstate agent Howard.  *See id*.

Before Defendants could issue a flood policy to Plaintiff, however, Allstate had to "rate" Plaintiff's home to determine the appropriate premium.  Plaintiff alleges that Howard performed a personal walk through of Plaintiff's home.  *See* Complaint, ¶ 4.  Plaintiff further states that Howard "represented that he had personally inspected [Plaintiff's home] prior to recommending to Allstate the coverages contained in Allstate's policy."  *See* Pl. Summary Judgment Memo at 1.  Critically, Plaintiff does not, or cannot, cite to any authority in the record to support these allegations.

Rather, Plaintiff admits that, to his knowledge, Howard never personally visited the subject home prior to the closing and effective insurance coverage; Oaks is unsure whether anyone from the insurance agency inspected his home until after the claim at issue.  *See* Pl.'s Dep., DE#43, at 23-25, 79-80.  Plaintiff also states that he initially contacted Howard about insurance by telephone, and he further believes that any subsequent contact with Howard was also by telephone.  *See id*. at 18, 22-23. During these phone conversations, Plaintiff said he "probably" described his house to Howard as a "two story" home.  *See id*. at 23.  Based on this information provided by Plaintiff, the original policy rated Plaintiff's home as a two-floor single family residence "with no basement."  *See* Def. Motion for Summary Judgment, DE#23, Exhibit 1.

Subsequently, Allstate issued Plaintiff a Standard Flood Insurance Policy ("SFIP"), pursuant to the National Flood Insurance Program ("NFIP").[2]  As coverage originally issued from Allstate, Plaintiff paid a $527 premium based on the aforementioned rating of Plaintiff's home.[3]  *See id*.  The policy became effective June11, 2003 and remained valid through June 11, 2004.  *See id*.

Neither party disputed the rating or policy coverage until May 31, 2004, when Plaintiff's home suffered flood damage.  *See* Complaint, ¶ 5.  The damage primarily occurred in the "downstairs" of Plaintiff's home.  *See* Pl. Dep., at 31-32.  Shortly after the casualty, Plaintiff submitted a claim for damages under his SFIP.  *See* Complaint, ¶6.  Allstate assigned Kenneth Higginbotham, an independent adjuster, to the claim.  *See* Def. Summary Judgment Memo at 3.  In addition, the adjuster assisted Plaintiff in presenting his claim, as "a courtesy only."[4]  *See id*.

---

[2]

The NFIP was established in 1968 by the National Flood Insurance Act, now codified at 42 U.S.C. §§ 4001 *et seq*.  Congress devised two alternative methods to operate the program, Plan A or Plan B.  *See Berger v. Pierce*, 933 F.2d 393, 395 (6th Cir. 1991).  In 1977, the federal government discontinued Plan A and implemented Plan B.  *See id*.  Under Plan B, FEMA has managerial responsibility for the program.  *See id*.  FEMA promulgated the SFIP, a **standard** policy, pursuant to its authority under the plan.  *See* 44 C.F.R. pt. 61 app. A(1); *see also Berger*, 933 F.2d at 395.

Congress also authorized, under Plan B, the appointment of "fiscal agents" to assist in issuing and processing flood insurance applications and claims. *See* 42 U.S.C. § 4071.  These agents are designated as "write your own" ("WYO") program carriers that may market and issue SFIPs in their own name as well as collect premiums and perform claims adjustment.  *See* 44 C.F.R. §§ 61.13(f), 62.23(a)-(h).  Defendant Allstate is a participating WYO company.

FEMA, however, retains ultimate authority over the issuance of policies and the decision to deny or approve claims.  *See Berger*, 933 F.2d at 395.  Likewise, WYO companies may not vary the terms of the SFIP, as promulgated by FEMA.  *See* 44 C.F.R. §§ 61.5(e), 61.13(d).  Furthermore, the premiums collected by the WYO companies, less any administrative expenses, belong to the federal government.  *See* 44 C.F.R. pt. 62 app. A.

[3]

Whether a home's lowest level is rated as a basement impacts the insurance premium.  *See* 44 C.F.R. § 61.9(a).  As such, Plaintiff initially paid a lower premium since Plaintiff did not have a basement according to his original home rating.  Def. Summary Judgment Memo, Exhibit 1.

[4]

Under the SFIP, the adjuster assigned to the case *may* assist the insured in reporting a claim.

Higginbotham inspected the property on June 6, 2004.  *See id.*  Although Plaintiff alleges roughly

$12,000 in damages, Higginbotham estimated an actual cash value loss of $9,750.10, after accounting

for Plaintiff's deductible and depreciation.  *See* Complaint, ¶ 9; Def. Summary Judgment Memo,

Exhibit 4, at 2.  Allstate adopted Higginbotham's estimate.

    Defendants explain that the estimated actual cash value was less than Plaintiff's alleged

damages because Plaintiff's "downstairs" is actually a "basement" under the SFIP.  Def. Summary

Judgment Memo at 4.  The SFIP defines a basement as "[a]ny area of the building, including any

sunken room or sunken portion of a room, having its floor below ground level on all sides."  *See*

Article II(B)(5) of the SFIP at 44 C.F.R. pt. 61, app. A(1).  Although Plaintiff describes the lower

level to his "two-story" home as a "downstairs," Plaintiff admits that the downstairs cannot be

accessed without descending steps.  *See* Pl. Dep., at 25-29.  In addition, the adjuster determined in

his report that the lowest level to Plaintiff's home is below grade on all sides. *See* Def. Summary

Judgment Memo, Exhibit 4, at 3.  As such, Defendants concluded that Plaintiff's downstairs is a

basement under the SFIP, despite the contrary characterization in the original policy rating.

    Under the SFIP, "basements" are subject to coverage restrictions not applicable to other

sections of a building.  *See* Article III(A)(8)(a)-(b) of the SFIP at 44 C.F.R. pt. 61, app. A(1).

Defendants further explain that federal law requires the application of those coverage restrictions,

even though the original policy rating did not characterize the downstairs as a basement.  *See* Def.

Summary Judgment Memo at 14.  The recharacterization of Plaintiff's residence resulted in more

limited coverage for the damage than originally would have applied.

---

*See* Article VII(J)(7) of the SFIP at 44 C.F.R. pt. 61, app. A(1).

Although Plaintiff expressed dissatisfaction with the adjuster's lower estimated damages, Plaintiff signed and submitted a "proof of loss statement"[5] in the amount of $9,750.10.  *See* Pl.'s Dep., at 42-43; Def. Summary Judgment Memo, Exhibit 5.  Despite his present claim to additional compensation, Plaintiff did not submit another proof of loss statement claiming further benefits.  Pl. Dep., at 42-43; Def. Summary Judgment Memo, Exhibit 5.  As such, Allstate issued, and Plaintiff accepted, payment in the amount determined by the adjuster.  *See* Pl. Dep., at 43; Def. Summary Judgment Memo, Exhibit 6; Complaint, ¶ 9.

In addition to receiving the proof of loss statement, Allstate also directed Plaintiff to pay a higher premium because of the re-rating.  *See* Complaint, ¶ 8.  Defendants explain that the inaccurate policy rating flawed (*i.e.*, understated) the original premium determination.[6]  As such, Plaintiff's home was "re-rated" following the investigation of Plaintiff's claim.  *See id*.  The second rating described Plaintiff's home as a two-floor single family residence, including a "finished basement."  Def. Summary Judgment Memo, Exhibit 9.  Based on this rating, Allstate charged Plaintiff an additional $106, for a total premium of $633.00.  *See id*.

In essence, Plaintiff seeks to recover under the SFIP, as applicable to his residence, as *originally* rated.  Plaintiff believes that his building should be treated as a two-story structure, as described in the application, instead of as a one-story building with a finished basement, as Allstate determined post-claim.  Plaintiff demands both policy benefits and a refund of the higher premium that resulted from the re-rating.

----

[5]

The SFIP requires the insured to send the insurer a signed and sworn proof of loss statement that describes the nature and amount of the casualty within 60 days after the loss.  *See* Article VII(J)(4) of the SFIP at 44 C.F.R. pt. 61, app. A(1).

[6]*See* note 3, *supra*.

**III.    Issues**

The Court discerns that the following issues are dispositive:

A.  Whether a "contract" dispute regarding the limitation of coverage under the SFIP  is governed by federal or state law.

B.  Whether Plaintiff's failure to claim additional damages, within 60 days after the loss, forecloses Plaintiff from any further recovery under the policy.

C.  Whether Allstate properly limited coverage on the basis that Plaintiff's "downstairs" is a "basement" under the terms of the policy, particularly where the policy originally rated Plaintiff's home as a two-floor single family residence "with no basement."

D.  Whether Plaintiff is entitled to a refund, following the change in his home rating, since Plaintiff allegedly was "forced to pay additional premiums for the same coverage."

**IV.    Standard of Review**

A court properly grants summary judgment when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  The moving party has the initial burden of establishing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2458, 91 L.Ed.2d 265 (1986).  The nonmoving party must thereafter produce specific facts demonstrating a genuine issue for trial.  *See id.* at 324.

There is no genuine issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Likewise, judgment as a matter of law

is appropriate where the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which the nonmoving party has the burden of proof.  *See Celotex Corp.*, 477 U.S. at 323.

When reviewing cross-motions for summary judgment, the Court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). In *Taft Broadcasting*, the Sixth Circuit pointed out that, on cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *See id*.

## V.    Analysis of Issues

### A.

Plaintiff inaccurately argues that state law controls the insurance "contract" claim presented before this Court.  Federal law alone governs suits that address the handling, denial, or other disposition of SFIP claims.  *See Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 949-50 (6th Cir. 2002); *see also Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) ("[F]ederal common and statutory law preempts state principles of contract law for purposes of the interpretation of NFIP policies."). The NFIP likewise preempts "state law tort claims arising from claims handling by a WYO."  *See Wright v. Allstate Ins. Co.,* 415 F.3d 384, 390 (5th Cir. 2005).  The SFIP itself specifically provides that "all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law."  *See* Article IX of the SFIP at 44 C.F.R. pt. 61, app. A(1).  Such language eliminates application of state contract or tort law to claims such as those presented by

Plaintiff. *See Berger*, 933 F.2d at 397; *Bartolome v. United States,* 2006 WL 2247326, at *2 (S.D. Tex. 2006) (finding state tort and contract claims preempted by NFIP).

Plaintiff characterizes this suit exclusively as a "contract action," and essentially alleges that Defendants improperly denied or limited his coverage under the policy. As a challenge to policy coverage and Defendants' decision to deny Plaintiff's further claims for damages under the SFIP, the action is appropriately and solely governed by federal law. *See Bruinsma v. State Farm Fire and Cas. Co.*, 410 F.Supp.2d 628, 632 (W.D. Mich. 2006)("In *Gibson*, the Sixth Circuit Court of Appeals held that the NFIA preempts all state-law causes of action that are based on the handling or disposition of claims under the standard flood insurance policy.")(citations omitted).[7] As held in

_____

[7] There is some uncertainty, however, whether federal law preempts state law claims arising under the NIFP in all circumstances. Some courts have suggested that claims relating to the *procurement* of Standard Flood Insurance Policies are not preempted by federal law. *See Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793, 796 (5th Cir. 1993)("While national policies underlying the NFIP and extensive federal role therein impel our conclusion that federal common law governs claims under flood insurance policies, the same does not apply in actions for tortious misrepresentation against WYO insurers."); *Landry v. State Farm Fire & Cas. Co.*, 428 F.Supp. 2d 531, 535 (E.D. La. 2000)(preserving "procurement" claim). *But see Moffett v. Computer Scis. Corp.,* 2006 WL 3000121, at *12 (D. Md. 2006)(finding procurement and handling claims preempted). The Sixth Circuit has explicitly declined to address "whether policy procurement type state law claims are preempted." *See Gibson*, 289 F.3d at 949-50.

Plaintiff's claims sound only in contract. *See* Pl.'s Summary Judgment Memo at 1 ("This is a contract action[.]"); Pl.'s Pretrial Memo at 1. Plaintiff seeks only a contract remedy. *See* Complaint ¶ 10 (seeking "actual damages"); ¶ 11 (seeking "full coverage as promised"); ¶ 12 (seeking "coverage he was promised"). Post-claim adjustment issues–e.g., Plaintiff's complaint about re-rating and/or about a premium increase–squarely relate to the handling, denial, or other disposition of coverage, which is exclusively governed by federal law. *See Gibson*, 289 F.3d at 949-50; *Bruinsma*, 410 F.Supp.2d at 632.

The Court further notes that Plaintiff offers no evidence or argument in support of a non-contractual theory. In addition to describing this suit exclusively as a contract action, Plaintiff also never identifies a tort or extra-contractual basis for relief. A misrepresentation theory would not seem available, because Plaintiff cites to no representations by Defendants in the record. Further, and quite importantly, Plaintiff testified that he did not detrimentally rely on the misrating. He agreed that if the property at issue had been properly rated from the beginning–*i.e.*, if "for flood insurance purposes, [the home] had a basement on the lower level and your flood insurance premium

*Bruinsma*, "[P]laintiffs' only claim is for breach of contract, and that breach of contract claim is governed completely by federal law." *See id.* at 632.

## B.

The SFIP specifically requires the insured to submit a signed and sworn proof of loss statement, describing the nature and amount of the casualty, within 60 days after a loss.[8]  *See* Article VII(J)(4)(a)-(I) of the SFIP at 44 C.F.R. pt. 61, app. A(1).  Plaintiff admits that he submitted only one proof of loss statement to the Defendants, in the amount of $9,750.10.  *See* Pl. Dep. at 42-43.  Allstate paid that claim, and Plaintiff accepted payment.  *See id.*  Plaintiff provided no other proof of loss statement alleging further damages.  *See id.*  This Circuit demands strict compliance with the proof of loss requirement under the SFIP, including the 60 day limitation period.  *See Neuser v. Hocker*, 246 F.3d 508, 511-12 (6th Cir. 2001).  Plaintiff's failure to comply with the proof of loss requirement procedurally forfeits any claim to additional damages.

Furthermore, Plaintiff may not avoid enforcement of the proof of loss requirement by "supplementing" or "amending" his original statement after the 60 day period expires.  Once the initial period lapses, the insured may not seek additional damages not reflected in the proof of loss.  *See Ambassador Beach Condo. Ass'n, Inc. v. Omaha Prop. and Cas. Ins. Co.*, 152 F.Supp.2d 1315,

---

was going to be more money," *See* Pl. Dep., at 82-83–he still would have purchased the home and paid the premium.  Further, Plaintiff cited nothing he would have done differently if the rating error had not occurred.

[8]   Policyholders in federal insurance programs are charged with knowledge of the terms governing those programs as defined in the applicable regulatory scheme.  *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85, 68 S.Ct. 1, 92 L.Ed. 10 (1947).  Indeed, participants have a duty to "familiarize" themselves with the program requirements.  *See Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 64, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).  As such, Plaintiff cannot plead ignorance to the technical provisions in the proof of loss requirement.

1316-17 (N.D. Fla. 2001); *Messa v. Omaha Prop. and Cas. Ins. Co.*, 122 F.Supp.2d 523, 529-30

(D.N.J. 2000).  There is no authority to suggest that the SFIP includes a procedure, at that point, to

readjust or amend claims.  *See Dogwood Grocery, Inc. v. South Carolina Ins. Co.*, 49 F.Supp.2d 511,

513 (W.D. La. 1999).  Moreover, the subsequent discovery of additional facts showing that a payment

failed to meet actual damages or evidence that the insurer improperly adjusted a claim does not

justify relief from the rigid proof of loss requirement.  *See Ambassador Beach Condo Ass'n*, 152

F.Supp.2d at 1316-17;  *Dogwood Grocery, Inc.*, 49 F.Supp.2d at 513

     In addition, Plaintiff cannot argue that conduct by Defendants works an estoppel with respect

to an NFIP claim.  In *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 434, 110 S.Ct. 2465, 110

L.Ed.2d 387 (1990), the Supreme Court held that the government cannot be estopped in a case where

the claimant is seeking public funds.[9]  "Since the *OPM* decision, no federal court has ever upheld a

claim of equitable estoppel by an insured seeking an award of public funds under a Standard Flood

Insurance Policy."  *See Bruinsma v. State Farm Fire and Cas. Co.*, 410 F.Supp.2d 628, 635 (W.D.

Mich. 2006).  As a result, the court in *Bruinsma* specifically rejected the argument that an insurance

company can be estopped from relying on the 60 day proof of loss requirement.  *See Bruinsma*, 410

F.Supp.2d at 634-35.  Likewise, Plaintiff cannot argue to estop Defendants from raising the proof of

loss defense.[10]

---

[9]

     Participating WYO companies, such as Defendant Allstate, are considered "fiscal agents"
of the federal government under the NFIP statutory scheme.  *See* 42 U.S.C. § 4071(a)(1).
Furthermore, payments made pursuant to a claim under the SFIP are considered a "direct charge on
the public treasury."  *See Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998).  As such, the
Supreme Court's holding in *OPM* is directly applicable to this case, which involves the payment of
federal funds.

[10]

     In addition to any estoppel arguments, it is also worth noting that Defendants could not have

In this case, it is undisputed that Plaintiff submitted only one proof of loss statement to Defendants, in the amount of $9,750.10. Payment of that claim was offered and accepted. The technical and strictly-construed proof of loss requirements under the NFIP require summary judgment on Plaintiff's additional claims under the SFIP.

## C.

Although Plaintiff's action fails for the reasons stated, Plaintiff's alternative contractual arguments are also unavailing. Plaintiff relies exclusively on the original home policy rating, which inaccurately applied the same coverage to both floors of Plaintiff's home by failing to treat the downstairs as a basement. *See* Def. Summary Judgment Memo, Exhibit 1. After Plaintiff filed his claim, Defendants determined that Plaintiff's downstairs was a "basement" subject to coverage limitations. *See* Complaint, ¶ 8. Defendants revised Plaintiff's home rating to reflect this determination and then increased Plaintiff's premium. *See* Def. Summary Judgment Memo, Exhibit 9.

Plaintiff does not address whether the downstairs is, in fact, a basement under the SFIP and thus appropriately subject to coverage restrictions. Plaintiff's only response is that Defendants cannot change the scope of coverage once the policy issues and Plaintiff has filed a claim. *See* Pl. Summary

---

waived the 60 day proof of loss requirement. *See* 44 C.F.R. § 61.13(d). Rather, the waiver of any term under the SFIP can be accomplished only with the express written consent of the Federal Insurance Administrator. *See id.*

The vast majority of appellate courts likewise severely restrict the power of WYO companies to grant waivers. *See Bruinsma*, 410 F.Supp.2d at 635-36. For instance, WYO companies may accept, in cases involving less than $7,500, an adjuster's report signed by the insured in lieu of a proof of loss statement under Article VII(J)(9) of the SFIP. *See id.* This limited power of waiver, however, is inapplicable to the circumstances of this case.

Judgment Memo at 4. Plaintiff describes the re-rating as an illegitimate contract "reformation."[11] *See id*. Plaintiff further implies that Defendants' actions violate his reasonable expectation that the same coverage should apply to both floors of his home. *See id*. at 2. As such, Plaintiff concludes that he is entitled to the coverage originally represented to him in the policy, as opposed to the limited coverage actually afforded by Defendants. *See id*.

All of Plaintiff's contentions are without merit. The record in this case clearly establishes that the policy *defines* Plaintiff's downstairs as a basement and restricts coverage. Moreover, Defendants must respect and apply those policy limitations as a matter of federal law, regardless of Plaintiff's original policy rating. In addition, conforming Plaintiff's actual claim to the terms of the policy required Defendants to revise Plaintiff's original home rating. For these reasons, more thoroughly explored below, summary judgment against Plaintiff on the contractual arguments is likewise appropriate.

### 1) Definition of a Basement under the SFIP

The SFIP defines a basement as "[a]ny area of the building, including any sunken room or sunken portion of a room, having its floor below ground level on all sides." *See* Article II(B)(5) of the SFIP at 44 C.F.R. pt. 61, app. A(1). Plaintiff admits that his entire downstairs cannot be accessed without descending steps. *See* Pl. Dep., at 25-29. Consistent with Plaintiff's statements, the adjuster also determined that the floor to the lowest level of Plaintiff's home is below grade on all sides and thus is a basement. *See* Def. Summary Judgment Memo, Exhibit 4, at 3.

---

[11]

Plaintiff further suggests that revising his home rating is entirely inappropriate where any inaccuracy in the original rating was the Defendants' fault. *See* Pl. Summary Judgment Memo at 3.

Furthermore, Defendants' assertion that the SFIP defines Plaintiff's downstairs as a basement is uncontested. At best, Plaintiff only argues that his home had no basement under the original home rating. That evidence alone, however, fails to raise a genuine issue of material fact because the original home rating is neither reliable nor controlling. Plaintiff seeks to take advantage of a fiction, now corrected by fact in the processing of the claim.

The record shows that the original policy rating resulted from information provided by Plaintiff to Howard over the telephone. *See* Pl. Dep., at 18, 22-23. Although Plaintiff suggests that Howard personally inspected the home before recommending coverage, the record does not support that allegation. Indeed, Plaintiff's own testimony establishes that, to Plaintiff's knowledge, Howard never visited his home. *See id*. at 18, 23-25, 79-80. Rather, Plaintiff indicates that he described his residence to Howard as a "two-story" home. *See id*. at 23. It appears that Plaintiff did not depose Mr. Howard.

Thus, the original home rating was not the product of a knowledgeable or expert determination, but a misunderstanding between Plaintiff and Howard. Although Plaintiff believed his home was a "two-story," the downstairs actually meets the definition of a basement under the SFIP. Of course, the misunderstanding went unresolved because Plaintiff was unfamiliar with the technical definitions in his policy and because Defendants evidently never performed an independent inspection until after the reported loss.

The initial home rating is not entitled to any special significance merely because it was incorporated into the original policy. Rather, home ratings are not controlling. *See* Article I of the SFIP at 44 C.F.R. pt. 61 app. A(1) (reserving right to "review" info provided by insured and "revise" policy based on review). Insurers may review and revise those ratings at any time, including after

a loss occurs. *See id.*; *see also* Article VII(G)(b) of the SFIP at 44 C.F.R. pt 61, app. A(1). Home ratings are informally determined and rely on applicants, who use common sense rather than technical policy definitions, to supply information. *See* Article II(B)(3) of the SFIP at 44 C.F.R. pt. 61, app. A(1)(providing that rating and processing home insurance policies may be based on the information provided by applicants). This procedure lends itself to errors. It is no surprise, then, that these rating are subject to revision under the SFIP.

In light of Plaintiff's own admissions, the determinations of the adjuster, and the circumstances of the erroneous home rating, there is no genuine issue of material fact. The record conclusively shows that Plaintiff's downstairs is a basement, as defined by the SFIP.

### 2) SFIP Coverage Limitations for Basements

The SFIP specifically limits the coverage available to basements. Article III(A)(8) of the SFIP provides that, with respect to basements, "[c]overage is limited" to an exclusive list of enumerated items and clean-up costs. *See* Article III(A)(8) of the SFIP at 44 C.F.R. pt. 61, app. A(1). Plaintiff does not challenge these coverage restrictions, or even the manner in which Defendants applied the coverage limitations to his claim. Rather, Plaintiff only argues that it was improper to treat his downstairs as a basement by revising the home rating after Plaintiff filed his claim. *See* Pl. Summary Judgment Memo at 4. Plaintiff makes no further arguments in the alternative. As such, since the Court finds that Plaintiff's downstairs is, in fact, a basement, the Court further agrees that the aforementioned provisions operate to restrict coverage to Plaintiff's downstairs.

### 3) SFIP Coverage Limitations Must be Respected and Applied

Moreover, Defendants must honor and apply the SFIP limitations to Plaintiff's claim, despite any contrary representation in the original policy rating. There is simply no coverage under the SFIP

unless it is provided for in accordance with the terms of the policy.  *See* 44 C.F.R.§ 61.5(e)("The standard flood insurance policy is authorized only under the terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself.").  Contrary to Plaintiff's argument, the scope of coverage **cannot** be expanded or varied by the representations of WYO companies.  *See Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793, 797 (5th Cir. 1993)(finding that § 61.5(e) "plainly evinces an intent to prevent expansion of SFIP coverage through misrepresentations by private parties involved with the program"); *see also* 44. C.F.R. § 61.13(d).  Therefore, since Plaintiff's downstairs is a basement that is subject to coverage restrictions under the policy, federal law required the Defendants to so limit Plaintiff's coverage.  Neither the actions by Defendants, nor the representations in the original home rating, can justify coverage that does not exist under the terms of the SFIP.  *See Spence*, 996 F.2d at 797.

*4) Revising Plaintiff's Home Rating*

Plaintiff's further contention – that Defendants improperly "reformed" the policy by revising the home rating after the contract was entered into and the claim was filed – ignores the terms of the SFIP.  As explained above, the SFIP provides that home ratings are not controlling and may be changed.  *See* Articles I and VII(G)(b) of the SFIP at 44 C.F.R. pt. 61 app. A(1).  Moreover, the power to review and revise home ratings is a necessary consequence of Defendants' invariable obligation to apply the SFIP coverage limitations at all times and in all circumstances.

Similarly, the power to revise home ratings does not depend on whether Defendants were at fault for the errors in the original home rating.  Plaintiff suggests that it is particularly appropriate to "penalize" Defendants for any mistakes in generating the initial home rating.  Regardless as to whether Defendants were at fault, Plaintiff's argument finds no support in the text of the SFIP.

Imposing any qualification on the Defendant's right to revise the home rating would be inconsistent with the NFIP, which authorizes coverage only as provided by statute, regulation, or the terms of the policy. *See* 44 C.F.R. § 61.5(e). Defendants properly revised Plaintiff's home rating, in accordance with the proof, before honoring his claim.

It is for all these reasons that Plaintiff's contractual arguments fail. There is no genuine issue of material fact, under the SFIP, that: 1) Plaintiff's downstairs is a basement; 2) basements are subject to coverage limitations; 3) Defendants must apply those coverage restrictions, despite any contrary representations; and 4) Defendants' obligation includes the power and duty to revise Plaintiff's home rating. Therefore, summary judgment is appropriate.

## D.

Plaintiff finally claims that he is entitled to a premium refund because Plaintiff was "forced to pay additional premiums for the same coverage," following the change in his home rating. *See* Complaint, ¶ 8. Plaintiff's argument refers to the $106 extra premium Allstate charged without any corresponding gain in coverage. *See* Def. Summary Judgment Memo, Exhibit 9. Plaintiff did ultimately pay a higher premium for limited coverage. Although this appears unfair at first glance, Plaintiff's argument ignores the terms of the SFIP as applied to the circumstances of his claim.

Under the NFIP regulatory scheme, for clear underwriting reasons, homes with basements are subject to higher premiums. *See* 44 C.F.R. § 61.9(a). In this case, Plaintiff's residence did not have a basement according to the original home rating. *See* Def. Summary Judgment Memo, Exhibit 1. As such, Plaintiff paid a lower premium. After Plaintiff reported his claim, however, Defendants determined that Plaintiff's downstairs did meet the definition of a basement under the SFIP. *See* Complaint, ¶ 8. As a result, the original premium was insufficient for the coverage afforded.

To extend coverage where the premium is determined, after the initial loss, to be insufficient, the carrier bills the insured for the required additional premium. *See* Article VII(G)(b) of the SFIP at 44 C.F.R. pt. 61, app. A(1). In this case, Defendants charged Plaintiff an extra $106. *See* Def. Motion for Summary Judgment, Exhibit 9. The Court further assumes this amount is correct since Plaintiff only challenges whether Defendants validly charged him "additional premiums for the same coverage."

Accordingly, Plaintiff's argument is without merit and must fail. Home ratings impact the premium charged. Homes rated with basements are subject to higher premiums under the NFIP regulations. In this case, the original home rating mistakenly provided that Plaintiff's residence did not have a basement. Based on this erroneous rating, Plaintiff paid a lower premium that was insufficient to extend coverage to Plaintiff's downstairs. As such, Plaintiff was required to pay an additional premium to extend coverage to the basement. Since the amount of additional premium charged is not contested, there is no further issue of law or fact. Thus, summary judgment is appropriate.

Accordingly,

It is **ORDERED** that the Motions for Summary Judgment by the Defendants Allstate Insurance Company and Dwight Howard are **GRANTED.** *See* DE #s22 and 27;

It is further **ORDERED** that the Motion for Summary Judgment by the Plaintiff Robert Oaks is **DENIED**. *See* DE# 29;

Defendant Allstate's Motion to Quash and Motion for Oral Argument, now being moot, likewise, are **DENIED.** *See* DE #s20 and 24).

The Court will enter a separate judgment.

This the 14th day of November, 2006.

Signed By:

*Robert E. Wier*   REW

**United States Magistrate Judge**